# WILLIAM SMITH

### *v.*

## SUEL WRIGHT *et al.*

1. TITLE—*fraudulently obtained—held in trust for owner.* Where a person entitled to a soldiers' bounty land warrant, employed another to obtain the warrant for him, and the person so employed, by fraudulent means, procured the land to be located under the warrant, in his own name, he will hold the title as a trustee for the rightful owner.

2. PURCHASERS—*from the respective parties—of their rights and liabilities.* A purchaser of the land thus situated, from the equitable owner .thereof, may maintain a bill against the party who obtained the title fraudulently, and those claiming under him, who are not innocent purchasers, and for a valuable consideration, for the purpose of establishing the fraud, and enforcing the trust in his favor.

WRIT OF ERROR to the Superior Court of Chicago.

This was a bill in chancery in the Superior Court of Chicago, exhibited by William Smith against Suel Wright, Patrick Rourk, James M. Adsit, and the Trustees of Schools of township 24, north range 6 in Grundy county.

The bill alleges, that one Lewis P. Holmes had a discharge from the army, having been enlisted as a soldier therein, and was entitled, by act of congress, to a bounty in land, and having his discharge in his possession, he applied to Adsit to procure for him his land warrant from Washington; that Adsit undertook the service, and prepared the necessary papers and affidavits for Holmes to sign and swear to, and at the same time, made out a power of attorney for Holmes to sign, authorizing the assignment of the warrant when it should issue, but leaving in the same, at the time it was signed, blank spaces for the date of its execution, the number and date of the warrant, and the name of the person to execute the power, to be inserted, which Holmes signed, and in that condition it was

404      SMITH *v.* WRIGHT *et al.*      [Sept. T.,

Statement of the case.

acknowledged before a notary public. This blank power of attorney was signed by Charles Farwell and J. M. Adsit, as subscribing witnesses.

The bill charges that Holmes was unacquainted with the papers necessary to be made out to obtain the warrant, and Adsit represented himself to him as familiar with all the forms and steps necessary to that object, in which. Holmes confided, and relied upon Adsit exclusively in the matter. That Adsit represented to Holmes that the power of attorney in its then condition, was a paper necessary for him to execute to procure the warrant, and under that representation, he executed it, believing it to be of that character ; and he alleges that thus, Adsit procured Holmes, by fraud, misrepresentation and circumvention, to sign the power of attorney, and that he signed it without any knowledge of its tenor and effect, and without any intention to give Adsit or any other person, any power to sell his land warrant, or the land that might be located under it. That this power, with the blanks not filled, was signed and left in the possession of Adsit, before the warrant was issued ; that about the 18th of August, 1848, a land warrant was issued to Holmes for 160 acres of land, for his services in the Mexican war, in pursuance of this application, and the certificate of such issuing was forwarded to, and received by, Adsit, who, thereupon, attached to it the power of attorney, and having filled the blanks for the number and date of the warrant, with the actual number, 23,129, and the date, August 18, 1848, thereof, and the blank of the person to create the power, with the name of L. D. Hoard, and the date of the power with the date of August 30, 1848, and on that day procured Hoard, without any ratification of the power by Holmes, and without his knowledge or. consent, or his attorney in fact, to assign and transfer the land warrant so received by Adsit, to Winn Adsit, by a writing endorsed thereon, and purporting to be executed in the presence of James Long and J. F. Waite, as witnesses, and on the 5th of September, 1848, Adsit located

the land warrant at the Chicago land office, on the land des-
cribed in the bill, in the county of Grundy, for which a patent
was issued to Adsit, as assignee of Holmes, on the 1st of June,
1850.   The bill alleges, that at the time the power of attorney
bears date, Holmes had not attained his majority, and did not
become 21, until about the 1st of October, 1856, long after
the land was located under the warrant, and that soon after
Adsit had sent the papers to procure the warrant, and about
the time it should have been received, Holmes applied to him
for it, and Adsit refused to let him have it, and then, for the
first time, set up the claim that it had been sold to him by
Holmes, and refused to give him any information about it, and
Holmes, for several years, was unable to get information about
it; that afterwards when Holmes became of age, about the
24th of October, 1850, by deed of that date, he conveyed the
land to the complainant, and the deed was recorded November
8, 1853 ; that Adsit, by deed dated September 6, 1848, con-
veyed the south-west 40 acres of the south-east quarter, to the
defendant, Wright, who was in possession, and by deed dated
May 1, 1849, conveyed the north half of the quarter-section
to James Craig, who, by deed dated December 21, 1850, con-
veyed it to Patrick Rourk, who was in possession, and Wright
had mortgaged the part conveyed to him, by deed dated April
14, 1853, to the Trustees of Schools, defendants.   Complain-
ant further charges, that by reason of such fraud and
circumvention on the part of Adsit, the power of attorney was
a nullity, and the persons purchasing the land from Adsit, are
by law charged with notice of the fact of such nullity ; that
the fact of blanks being left in the power of attorney and cer-
tificate of acknowledgment, is evident from inspection ; that
the making sale of the land warrant before it issued, or the
execution of any power of attorney authorizing the sale
thereof, before the issuing of the warrant, is, by the law of
congress, a nullity, and so, if Holmes did sell and knowingly
execute the power, the same is void as against Holmes and

those claiming under him subsequent thereto, and that the power of attorney is a nullity, by reason of Holmes being under age when it was executed ; that Adsit must be held to have acquired, held and located the warrant as trustee of Holmes, and that Holmes, before assignment to complainant, was entitled to demand from Adsit, and from all persons acquiring title from him, to convey the same to him, Holmes ; that the patent issued to Adsit showed upon its face that it was to him as assignee of Holmes, under a power to L. D. Hoard from Holmes, and that all the defendants were thereby expressly charged with notice of the fact that Adsit derived his title to the land warrant under the power of attorney, and not by a direct conveyance executed by Holmes in person.

The bill waives answer on oath, and prays that Adsit may be decreed to have acquired this land to and for the use and benefit of Holmes, his heirs and assigns ; that the several conveyances set forth, may be charged with the same trust, and the grantees therein to hold the same in trust for Holmes, his heirs and assigns, and be decreed to release to complainant, as assignee of Holmes, these lands, and to surrender the possession to complainant. An account of rents and profits is prayed, and also an injunction, and for general relief.

Wright answers and denies all notice, and alleges that he bought of Adsit, for a good, valuable and adequate consideration, to-wit, $50, without any knowledge or information of any transaction between Holmes and Adsit.

Rourk, answering, says, Adsit conveyed the north half to Craig, who conveyed it to him, Rourk ; that Craig's purchase was *bona fide*, for the consideration of $100 paid by Craig, and without any knowledge, on the part of Craig, of any transaction between Holmes and Adsit, or of any fraud, &c.; that he purchased the land of Craig, for a good and valuable consideration to him paid, and without any knowledge or information on his part of any transaction between Holmes

and Adsit.   They deny all knowledge of blanks being left in the power of attorney, &c.

Adsit denies in his answer, that he ever engaged to procure the land warrant for Holmes, but bought his discharge and the warrant to be obtained under it; admits the blank spaces left in the power of attorney, &c.   He positively alleges the papers were made out in order that he should get the warrant for himself, and were in the usual mode of preparing such papers; that on the delivery of the papers, he paid Holmes $40 in full for his right to the discharge, and the land warrant that might be issued upon it; denies any misrepresentations, and again alleges Holmes sold the land warrant to him for $40; admits filling the blanks, and that Holmes did not, thereafter, re-acknowledge the power; denies he was not of age at the time, &c.; admits sales as charged in the bill.

A general replication was filed to these answers.

The bill was afterwards amended, by consent of parties, by inserting an offer to repay any sum of money that might have been paid by Adsit for Holmes, &c.

Proofs were taken, and they showed that Holmes was born May 21, 1828.

Lewis H. Holmes, by his deposition, taken by consent, proves all the material facts stated in the bill.   He testifies he left his certificate of discharge with Adsit, at the time he came out of the service.   He got out of money; went to Adsit and requested him to buy the warrant; he refused; then asked him to get the warrant for witness, and to let him have some money on it to get home with, which Adsit finally consented to do, and which witness told him he would repay when he got his warrant.   Adsit then requested him to make out a power of attorney for him to get the warrant, which witness did, but the import of the writing he did not know, for the reason he did not read it.   These are all the papers he recollects of making; is not certain but that he made oath to his identity, age and name; went to the clerk's office and made

oath to a paper.   Adsit gave him a check for between $30 and $40, and said it would take three or four months to get the warrant.   Witness told him he would return the money when he got the warrant.   This was in the fore part of July, 1848, at a place Adsit called his office, on Clark street in Chicago. There was present another man witness did not know.   Some time in the month of August following, witness called on Adsit at his office, and demanded the warrant.   Adsit said he had no warrant for him.   He told Adsit he had the money to pay him, and also for getting the warrant.   Adsit said he never had done any business for him.   Thinks there were others in the office besides a young man, Halifor, himself, and Adsit.

This witness was cross-examined as to his interest in the suit, and denies all interest.   States he sought information from Mr. Wentworth, the member of congress from the district, about the warrant, and he wrote him the warrant had been issued, and advised him to wait until the warrant was returned.

After this deposition was made, Holmes executed to complainant a release, which it was agreed between the parties should have the same effect as if executed and delivered before the taking of the deposition.   The release was dated April 9, 1855, and releases the complainant from all trusts, equities and rights, whether resulting or otherwise growing out of the conveyance of this land by Holmes to Smith.

The cause was heard on bill, answers, replications and proofs, and a decree entered dismissing the bill.

Mr. W. T. BURGESS, for the plaintiff in error.

Messrs. KING & SCOTT, the defendants in error.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

The facts stated in the bill are fully proved by Holmes, a prominent actor in them, and as his testimony is not contradicted by any evidence, we do not see how the court could have avoided decreeing in his favor. His statement is a very plain and a very natural one, and is in no way weakened by any established fact in the cause, and it must be regarded as the true version of the transaction, and Adsit must be adjudged the trustee of the land, holding for Holmes' benefit, and that of his heirs or assigns. Complainant is his assignee by deed duly executed and recorded.

As to the other defendants, there is no proof whatever they are innocent purchasers, and for a valuable consideration. Such proof is indispensable. *Chaffin* v. *Heirs of Kimball*, 23 Ill. 39; *Powell* v. *Jeffries*, 4 Scam. 387.

We make no point of the fact that Holmes was not of age when he executed the blank power, nor on the fact that the law of congress forbade a sale of the warrant before it was issued, since, admitting all this to be regular, we are satisfied, from the facts in the case, that Holmes never sold or intended to sell the warrant to Adsit, and that all pretences of that kind have no foundation to support them. It is a clear case, from the proof, for the complainant, as he had a right to obtain the conveyance from Holmes, when of age, and establish the fraud in a court of equity, and be protected in his rights. *Whitney* v. *Roberts*, 22 Ill. 381.

The decree of the superior court dismissing the bill, is reversed, and the cause remanded.

*Decree reversed.*