# JOHN H. WEAVER

*v.*

# WILHELMINA FISHER.

*Filed at Ottawa May 19, 1884.*

1. JURISDICTION IN CHANCERY—*in matters of trust.* In the case of a trust, as, between a principal and agent, it is well settled that a court of equity has jurisdiction to enforce an accounting and a surrender of the trust property, the time when the trustee should do so having arrived, and he having refused.

2. TRUST—*when it arises—as between principal and agent.* Where a person is employed as an agent in the conduct of the financial part of the business of his principal, the relation is a fiduciary one in its character; and if the agent appropriates the property of his principal to his own use, or makes any profit to himself by virtue of his position, he must account therefor as for a trust.

3. Upon bill in chancery by a principal against his agent, to compel an accounting by the latter in respect of the business of his employment, and a surrender of property in his hands, it appeared there was an agreement whereby the defendant was to act as manager of the office part of the complainant's business (milling), except the running of the mill; to purchase grain, ship the product, make sale thereof, and do the banking and financial business,—all in defendant's name, but in fact taking no interest therein; to account therefor to the complainant, and upon a discontinuance of the employment to turn over and surrender to the principal all the money and other property, of every kind and nature, in his possession or under his control, belonging to the principal. It was *held,* this arrangement created a trust in the money and property of the principal or employer, of which the defendant became possessed under and by virtue of his employment.

4. RESULTING TRUST—*when it arises.* Where a person occupying a fiduciary relation purchases property with the trust funds, and takes title in his own name, a trust in the property will result to the *cestui que trust,* and this whether the property right is absolute, or only qualified and contingent.

5. BOARD OF TRADE—*certificate of membership—how far to be considered as property, so that a court of equity will interpose to protect the owner in its enjoyment—and generally, as to property rights not subject to judicial sale.* A person engaged in the milling business in Chicago employed an agent to manage the financial part thereof, and furnished him with a certificate of membership in the board of trade of that city, to enable him to conduct that part of the business advantageously, and such agent, on leaving his employment, refused to transfer such certificate and surrender the

same to his employer: *Held,* that a court of equity would compel him to assign the same in blank, and deliver the same to his employer.

6. There is a large class of legal rights in which there is a property interest, which, by reason of the personal and peculiar character of such rights, can not be made the subject of transfer by judicial sale, such as, an interest in real estate conditioned to become void on alienation or transfer to another; contracts for personal services requiring the individual care and skill of the one party in and about some matter affecting the person or personal tastes of the other party. But still, a court of equity will interpose to prevent a deprivation of their enjoyment.

7. SAME—*former decision—as to property in certificate of membership in board of trade.* It is a misapprehension to suppose that this court held in *Barclay* v. *Smith,* 107 Ill. 349, that there are no property rights of any kind in a certificate of membership in the board of trade of the city of Chicago. It was simply held in that case that such a certificate is not property which is liable to be subjected to the payment of the debts of the holder by legal proceedings, under the law as it now exists.

8. PARTIES—*in chancery—to compel surrender by an agent of a certificate of membership in board of trade.* On bill by a principal against a former agent to compel him to account for moneys and property coming to his hands, and to compel him to surrender to the principal a certificate of membership in the Chicago board of trade, taken by the principal in the agent's name, the board of trade is not a necessary party, there being no relief sought against it.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

Wilhelmina Fisher exhibited her bill in chancery in the Superior Court of Cook county, against John H. Weaver, wherein, among other things, she alleged that on the 1st of September, 1880, she and said Weaver entered into an agreement, whereby she hired him to assist her in conducting the milling business, in which she was then engaged, as clerk and manager of the office part, but not in running the mill, for one year, for a named salary. He was to conduct the banking and financial part of the business in his own name, but was to have no interest therein. He was also to keep proper books of account, and each month exhibit a true

account of the business, showing profit or loss.   He further agreed to loan her $1000, and take her note, secured by chattel mortgage therefor, and that when his employment ceased he would turn over to her all of her money and property, of every kind.   She alleged, also, that both parties began the performance of the contract on the day it was entered into ; that about said date she bought a certificate of membership in the Chicago board of trade, numbered 2861, for $475, which she had transferred to him, but was paid for with her money, and still belonged to her; that on the 15th of November, 1881, defendant, who had up to that time continued in the employ of complainant, terminated his engagement; that on August 20, 1881, defendant drew one year's interest on $1000, and $500 of the principal, for himself, and he could have paid himself the rest had he chosen to do so, but he preferred to hold the note and mortgage ; that when defendant left the employ of complainant he had in his possession, belonging to her, $1000 in money, several shipments of milling products, and said certificate of membership in the board of trade ; that she requested him to turn over to her said money, merchandise and board of trade certificate, after paying himself what was due on said loan, but he refused to do so, and then for the first time claimed to own said board of trade certificate, and stated that he should hold the money and merchandise till she consented to his ownership, which she refused to do ; that on the 13th of December, 1881, defendant paid over the amount of the shipments to the complainant, but retained $1159.16 in his hands, which belonged to her, and refused to pay himself out of it, and to turn over the board of trade certificate, which he still retained ; that complainant tendered defendant the amount due on the note and mortgage, and demanded the same, and the board of trade certificate, but he refused to give it up.   She further alleged that the board of trade certificate, since its purchase, had risen in price from $475 to $4000, on November 15, 1881,

which price it still bore; that she wished to use said certificate in her milling business, so as to enable an agent in her employ to buy grain for her mill, on the board of trade; that the defendant was not responsible financially. The bill prays for a final decree compelling defendant to pay to complainant what he owes her, after satisfying said note and mortgage, and to transfer and deliver said certificate to such person as she should select, and for general relief, etc.

Weaver answered, admitting the contract set out in the bill, and that the business was conducted in his name. He denies that the board of trade certificate was bought by or belonged to complainant, that he ever admitted it did, and that he had ever refused to turn over to complainant money or property belonging to her. He says he made personal application for membership to the board of trade, and was accepted and admitted as a member, and paid his assessments out of his personal means. He admits that his debt was paid to him in full about September 1, 1881, and says the reason the note and mortgage were not surrendered was because he was not asked for them, and that when they were demanded of him he gave them up. He alleges that he has turned over all money, etc., belonging to complainant, and that he did not do so when first requested because he was personally liable on outstanding debts, etc. He claims that membership in the board of trade is a personal privilege, and not a property right of which a court of equity has jurisdiction, and that he is the sole owner of the personal privilege conferred by certificate.

The cause was heard on bill, answer and proofs. The decree finds that the court has jurisdiction of the parties and subject matter; that the material allegations in the bill are true; that defendant, at the time the bill was filed, and at the time the decree was entered, was in possession of a certificate of membership in the Board of Trade of Chicago, (No. 2861,) and standing in his name, but that said certificate

then belonged to complainant; that defendant had $79.66 due to complainant, and decreed that defendant be enjoined from disposing of said certificate except as in said decree provided; that he forthwith execute an assignment in blank of said certificate, and deliver the certificate, so signed, together with the ticket of admission to the board of trade, to the complainant, and that he pay $79.66 to complainant, with her costs, and that she have execution therefor. From this decree the defendant appealed to the Appellate Court for the First District, and that court affirmed the decree of the Superior Court. This writ of error is sued out to bring in review that judgment of affirmance.

Messrs. HUTCHINSON & PARTRIDGE, for the plaintiff in error:

The whole case rests upon the hypothesis that the certificate of membership in the board of trade was a chattel, and salable in the market. If a chattel, full compensation for the breach of contract could be had in an action at law for damages. This is always a complete answer to a bill for specific performance. *Pierce* v. *Plumb*, 74 Ill. 326; *Ross* v. *Buchanan*, 13 id. 55; *Marble Co.* v. *Ripley*, 10 Wall. 339; *Cud* v. *Rutter*, 1 P. Wms. 570; *Adderly* v. *Dixon*, 1 Sim. & Stu. 607; *Nutbrown* v. *Thornton*, 10 Ves. Jr. 160; *Mason* v. *Armitage*, 13 id. 25; Waterman on Specific Per. secs. 9, 16, 17, 19; Fry on Specific Per. secs. 11, 12; *Harnett* v. *Yielding*, 2 Sch. & Lef. 549; Story's Eq. Jur. secs. 716, 717, 717 a.

The bill should have been dismissed for want of proper parties. The board of trade was a necessary party to the suit, in order to do complete justice between the parties. Story's Eq. Pleading, sec. 72; Daniell's Chancery Practice, 181.

This objection was available upon the hearing, (Story's Eq. Pleading, sec. 75,) and although the objection was not made by either party. Daniell's Chancery Practice, 285, note 2.

We understand that it is the settled law of this State that such a membership is not such a property right as it was competent for the court to transfer by its decree, as was sought to be done in this case. *Rice* v. *Board of Trade*, 80 Ill. 134; *Barclay* v. *Smith*, 107 id. 349; *In re Sutherland*, 6 Biss. 526; *Thompson* v. *Adams*, 93 Pa. St. 55; *Pancoast* v. *Gowen*, id. 66.

˙Mr. RUFUS KING, for the defendant in error:

This is not a suit simply to enforce the specific performance of a contract, but to compel the plaintiff in error to make his account of his principal's money received by him in a fiduciary capacity, the amount resting in his knowledge only, and enforce a trust. The enforcement of trusts is an original ground of equity jurisdiction. *Harris* v. *Douglas*, 64 Ill. 469; *Hopkins* v. *Granger*, 52 id. 510; *Attorney General* v. *Illinois Agricultural College*, 85 id. 520.

Although a court of law may also have jurisdiction, this does not oust a court of equity, where the object is to enforce a trust. *Coates* v. *Woodworth*, 13 Ill. 654; *Marlow* v. *Marlow*, 77 id. 634.

The objection that there is a want of proper parties, is also without foundation. Story's Eq. Pleading, 72.

A certificate of membership in the board of trade is property. *Hyde* v. *Wood*, 4 Otto, 523; *In re Ketchum*, 1 Fed. Rep. 840; *Gallagher* v. *Lane*, 19 N. B. 224; *Retterbond* v. *Baggott*, 4 Abbott's N. C. 67; *Grocers' Bank* v. *Murphy*, 60 How. Pr. 426.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Three grounds are urged for reversing the decree of the Appellate Court: First, if the subject matter of litigation is such that any relief should be granted, the remedy is at law, and not in equity; second, but the subject matter of litigation is not such as the court can act upon to grant any

relief; and third, in any view, the board of trade is an indispensable party.    These will be briefly considered, in the order stated.

*First*—The agreement set out in the bill, admitted in the answer, and read in evidence on the hearing, whereby the defendant agreed to act as clerk of the complainant and manager of the office part of her business, (except the running of the mill,) to purchase grain, ship the ground product, make sale thereof, and do the banking and financial business, all in his own name, (but in fact all ownership therein being in the complainant, and he having no interest therein,) account therefor to the complainant at the intervals provided in said contract, and, upon a discontinuance of the employment, to turn over and surrender to the complainant all the money and property, of every kind and nature, in his possession or under his control, belonging to the complainant, creates a trust in the money and property of the complainant of which the defendant became thus possessed.    As to the duties imposed upon the defendant by the contract, it seems to be conceded the relation of principal and agent is created.    But this is a fiduciary relation, and if the agent appropriate the property of his principal to his own use, or make any profit to himself by virtue of his position, he must account therefor as for a trust.    (Perry on Trusts, (2d ed.) sec. 206; *Smith* v. *Wright et al.* 49 Ill. 403; *Clapp, Admr.* v. *Emery,* 98 id. 523; *Davis* v. *Hamlin,* 108 id. 39.)    There being a trust, nothing is better settled than that a court of equity has jurisdiction to enforce an account and surrender of the trust property, the time when the trustee should do so having arrived, and he having refused.

*Second*—It is a misapprehension to suppose, as counsel for plaintiff in error seem to, that we held in *Barclay* v. *Smith,* 107 Ill. 349, that there are no property rights of any kind in a certificate of membership in the board of trade of the city of Chicago.    We simply there held that such a certificate is

not property which is liable to be subjected to the payment of the debts of the holder by legal proceedings. We did not intimate that from the nature of a certificate of membership in the board of trade, it could not, by statute, be subjected to the payment of debts, but only that, under the law as it now is, it can not be. Whether property shall be liable to be subjected to the payment of debts by legal proceedings, and if so, in what manner, is purely a matter of statutory regulation. At common law, shares in stocks were held not to be chattels. (Angell & Ames on Corporations, (5th ed.) sec. 560; Hermann on Executions, sec. 362.) And, also, to be of such an intangible nature that there could be no change of possession, and therefore that they could not be sold on execution. (Angell & Ames on Corporations, (5th ed.) sec. 560.) And it is held the interest of the inventor in a patented invention, and of the author in the copyright of a book, can not be sold on execution. (Freeman on Executions, sec. 110.) And it is said the weight of authority is in support of the view that equity has no power, in ordinary cases, to compel the appropriation of choses in action to the payment of their owner's debts. (Freeman on Executions, sec. 425.) By statute, shares in stocks may be now sold on execution, and, doubtless, the inventor's interest in his patent, and the author's interest in his copyright, might, by statute, be made subject to sale on execution. There is, however, a large class of legal rights in which there is a property interest, that, by reason of their personal and peculiar character, manifestly could not be made the subject of transfer by judicial sale,— such, for instance, as an interest in real estate conditioned to become void on alienation or transfer to another; contracts for personal services requiring the individual care and skill of the one party in and about some matter affecting the person or personal tastes of the other party. But in all these cases it is too obvious to require the citation of authorities, a court of equity would interfere to protect against depriva-

tion of enjoyment; and it is impossible to conceive any reason why a court of equity will not, upon like principle, interfere here to protect the complainant's interest in this certificate of membership in the board of trade.

This defendant has not a shadow of authority for retaining this certificate. It was bought with the money of the complainant, and placed in his name solely for the purpose of enabling him to conduct that part of her business which he had undertaken to conduct for her. If he be allowed to retain it, since it has a market value of $3400 to $4000, he can realize upon it to that amount, and she will be driven to the payment of that amount to obtain another certificate, in order that her business may be conveniently carried on, and to place her in the condition in which she now is if she only be allowed to retain her own. In *Davis* v. *Hamlin, supra,* at page 49, we quoted from the American notes to *Keech* v. *Sanford,* 1 Leading Cases in Equity, 53, the rule applicable here, as follows: "Wherever one person is placed in such relation to another, by the act and consent of that other, or the act of a third person or of the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interest he has become associated." The rule is general, and of familiar application in this court, that where a person occupying a fiduciary relation purchases property with the trust funds, and takes title in his own name, a trust in the property will result to the *cestui que trust,*—and this, on principle, must be true whether the property right is absolute or only qualified and contingent. The right, whether large or small, is entitled to protection, if its deprivation may affect adversely the *cestui que trust.* It can not be said, here, that we must, from the nature of this corporation, hold there can be no pecuniary value in a certificate of membership, because the proof shows the contrary with absolute certainty. It has a

regular pecuniary market value, notwithstanding the conditions to which the transfer of its title is subject. .

*Third*—It is sufficient to say as to the last point, no relief is sought against the board of trade. The contest is purely between plaintiff in error and defendant in error, and in nowise concerns the board of trade. It will be time enough to make it a party when a decree is sought against it. Whether the party to whom the defendant in error desires the certificate assigned will be acceptable to and received by the board, can not, in any possible way, concern plaintiff in error.

The judgment is affirmed.

*Judgment affirmed.*